No. 23-1776

## UNITED STATES COURT OF APPEALS
### FOR THE EIGHTH CIRCUIT

ALLETE, INC., et al,
*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.
*Respondents*.

On Petition for Review of an Agency Action
of the United States Environmental Protection Agency

**Petitioners' Motion to Stay**

DOUGLAS A. MCWILLIAMS
JOHN LAZZARETTI
JON BLOOMBERG
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower
127 Public Square
Cleveland, OH 44114
216.479.8500
douglas.mcwilliams@squirepb.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................3

I.     States Are the Primary Regulators under the NAAQS. .......................3

II.    EPA Informally Adopted a Framework for States to Use in Developing their Good Neighbor SIPs. ..................................5

III.   EPA Issued Data, Modeling, and Recommendations for States to Use in Developing Their SIPs...........................................6

IV.   Procedural History.........................................................................8

A. EPA Updated the Ozone NAAQS.........................................8

B. Minnesota Used EPA's Framework, Data, Modeling, and Recommendations to Develop Its SIP. ....................................8

C. EPA Found No Error or Omission in Minnesota's SIP, Yet Still Disapproved It. ................................................10

D. EPA Simultaneously Issued a FIP that Will Impose Irrecoverable Costs on Petitioners. ...........................................12

STAY STANDARD ...........................................................................13

ARGUMENT .......................................................................................13

I.     Petitioners Are Likely To Succeed On The Merits............................13

A. EPA Cannot Base its SIP Disapproval on Information That Was Not Subject to Notice and Public Comment.....................14

B. The SIP Disapproval is Contrary to the CAA and Undermines Cooperative Federalism......................................17

II.    Petitioners are Already Suffering Irreparable Harm. ..........................20

III.   Staying the SIP Disapproval Will Not Significantly Injure Other Parties. .....................................................22

IV.   The Public Interest Lies in Granting a Stay. ......................................23

CONCLUSION.....................................................................................23

Appellate Case: 23-1776   Page: 2   Date Filed: 05/31/2023 Entry ID: 5282381

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Envt'l Council v. EPA,*
711 F.3d 1277 (11th Cir. 2013) ...............................................................4

*State of Ohio ex rel. Celebrezze v. Nuclear Regul. Comm'n,*
812 F.2d 288 (6th Cir. 1987) ...............................................................13

*EME Homer City Generation, L.P. v. EPA,*
696 F.3d 7 (D.C. Cir. 2012)................................................................21

*FCC v. Prometheus Radio Project,*
141 S. Ct. 1150 (2021)........................................................................14

*Iowa Utils. Bd. v. FCC,*
109 F.3d 418 (8th Cir. 1996) ..............................................13, 20, 22

*Kennecott Corp. v. EPA,*
684 F.2d 1007 (D.C. Cir. 1982)..........................................................16

*Marsh v. Or. Nat. Res. Council,*
490 U.S. 360 (1989)......................................................................14, 19

*Nebraska v. EPA,*
812 F.3d 662 (8th Cir. 2016) ..............................................................4

*Nken v. Holder,*
556 U.S. 418 (2009)............................................................................13

*North Dakota v. EPA,*
730 F.3d 750 (8th Cir. 2013) ..............................................................3

*Sierra Club v. Costle,*
657 F.2d 298 (D.C. Cir. 1981)............................................................14

*Sierra Club v. EPA,*
356 F.3d 296 (D.C. Cir. 2004)............................................................18

Appellate Case: 23-1776   Page: 3   Date Filed: 05/31/2023 Entry ID: 5282381

*Sierra Club v. EPA*,
  939 F.3d 649 (5th Cir. 2019) ...............................................................18

*Small Ref. Lead Phase-Down Task Force v. EPA*,
  705 F.2d 506 (D.C. Cir. 1983) ......................................................14, 17

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2018) ...............................................19, 20, 22

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) .........................................................................20

*Union Elec. Co. v. EPA*,
  427 U.S. 246 (1976) .........................................................................18

*Utah Physicians for a Healthy Env't v. Kennecott Utah Copper, LLC*,
  191 F. Supp. 3d 1287 (D. Utah 2016) ...............................................5

**Statutes and Rules**

5 U.S.C. § 706(2)(A).................................................................................13

42 U.S.C. § 7410(a)(1)...............................................................................4

42 U.S.C. § 7410(a)(2)(D)..........................................................................5

42 U.S.C. § 7410(c) ............................................................................12, 21

42 U.S.C. § 7410(c)(1)...............................................................................5

42 U.S.C. § 7410(k)(1)(B)..........................................................................4

42 U.S.C. § 7410(k)(2)...............................................................................4

42 U.S.C. § 7410(k)(3)....................................................................4, 18, 19

42 U.S.C. § 7607(d)(9)..............................................................................13

FRAP 18(a)(1)............................................................................................3

FRAP 18(a)(2)(A).......................................................................................3

FRAP 18(a)(2)(C).......................................................................................3

Appellate Case: 23-1776    Page: 4    Date Filed: 05/31/2023 Entry ID: 5282381

**Federal Register**

87 Fed. Reg. 20,036 (April 6, 2022) .........................................................12

88 Fed. Reg. 9,336 (Feb. 13, 2023) ...............................................*passim*

87 Fed. Reg. 9,838 (Feb. 22, 2022) ...........................................................5

80 Fed. Reg. 65,292 (Oct. 26, 2015).........................................................8

**Other Authorities**

Unpublished Order, *Texas, et al. v.* EPA, Case No. 23-60069
   (5th Cir. May 1, 2023) ................................................................17, 19

Appellate Case: 23-1776    Page: 5    Date Filed: 05/31/2023 Entry ID: 5282381

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 18, Petitioners respectfully request a stay of EPA's disapproval of Minnesota's State Implementation Plan ("SIP") for the interstate transport of ozone to avoid the imposition of imminent and unnecessary legal burdens on Petitioners and to protect the integrity of the system of cooperative federalism on which the Clean Air Act ("CAA") is based.[1]

Minnesota used the best data and modeling science available to it to assess its impact on downwind states, as it was required to do under the CAA. The results showed that Minnesota was not interfering with attainment or maintenance of the National Ambient Air Quality Standards ("NAAQS") in any downwind state. Minnesota properly used this data to conclude that no further requirements were needed in its SIP.

Minnesota timely submitted its SIP to EPA for approval in 2018. EPA identified no errors or omissions. As a result, it was required to approve Minnesota's SIP in 2020. Instead, EPA delayed action for almost three years, then *disapproved* Minnesota's SIP because it did not address data and modeling that EPA had just published with its final decision. Neither Minnesota nor Petitioners

---

[1] Air Plan Disapprovals; Interstate Transport for Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("SIP Disapproval").

1

were given the opportunity to comment on EPA's new modeling, fully evaluate it, or even see it, until EPA published its SIP Disapproval. This clearly violates the notice and comment requirements of the CAA and the Administrative Procedure Act ("APA"). For this reason alone, EPA's SIP Disapproval was arbitrary and capricious.

EPA's reliance on data that was not available until years after Minnesota submitted its SIP also violates both the terms of the CAA and the spirit of cooperative federalism on which it is based. EPA had no statutory authority to reject Minnesota's SIP based on after-arising data. EPA's improper SIP disapproval also paved the way for EPA to supplant Minnesota as the primary regulatory authority in the state and issue a federal implementation plan ("FIP") that will impose onerous and unnecessary regulatory burdens on Petitioners.

As discussed in the attached declarations,[2] the harm from EPA's FIP is clear and imminent. EPA has already signed its FIP. It only awaits publication in the Federal Register to take effect. The FIP is already imposing irrecoverable planning burdens on Petitioners, and once effective, will force them to incur substantial additional costs based on an erroneous conclusion that significant additional emissions reductions are needed from Minnesota.

---

[2] *See* Mitchell Declaration, App'x 1147; West Declaration, App'x 1157; Skelton Declaration App'x 1165.

2

The balance of harms and the public interest favor a stay. The Fifth Circuit Court of Appeals has already stayed EPA's disapproval of two SIPs, for Texas and Louisiana, that were based on the same after-arising data and similar disregard for those states' primary authority in meeting the NAAQS. The same result is warranted here.

Consistent with FRAP 18(a)(1), Petitioners first requested a stay from EPA on April 14, 2023. EPA acknowledged receipt on April 27, 2023 but has otherwise not responded. Having unsuccessfully attempted to obtain the relief requested from the agency, a stay from this Court is appropriate. FRAP 18(a)(2)(A). Consistent with FRAP 18(a)(2)(C), Petitioners informed EPA of their intent to file a motion for stay on May 5, 2023. EPA opposes the motion.

## <u>BACKGROUND</u>

### I.     States Are the Primary Regulators under the NAAQS.

The NAAQS are built on the principle of cooperative federalism. *North Dakota v. EPA*, 730 F.3d 750, 757 (8th Cir. 2013) (discussing the applicability of cooperative federalism to CAA § 110). As this Court has explained, the CAA "sets forth a basic division of labor: The Federal Government establishes air quality standards, but States have primary responsibility for attaining those standards within their borders." 730 F.3d at 757 (quotations omitted). The CAA "thus leaves it to the individual States to determine, in the first instance, the particular

3

restrictions that will be imposed on particular emitters within their borders." *Id.*
(quotations omitted). Only if a state "fails to submit a SIP, submits an incomplete
SIP, or submits a SIP that does not meet the statutory requirements," can EPA
implement its own FIP, and then only if the state does not "correct the deficiency
itself and EPA … approve[s] that correction within two years." *Id.*

Under this framework, EPA's SIP review is limited. *Nebraska v. EPA*, 812
F.3d 662, 667 (8th Cir. 2016) ("only when a state agency's determination is 'not
based on a reasonable analysis' may EPA step in to ensure that the statutory
requirements are honored") (*quoting Alaska Dept. of Envt'l. Conserv. v. EPA*, 540
U.S. 461, 490 (2004)). SIP submissions are due within three years of a new or
revised NAAQS. 42 U.S.C. § 7410(a)(1). EPA reviews the submission first only
for completeness. 42 U.S.C. § 7410(k)(1)(B). EPA has six months for this review.
*Id.* If it is complete, EPA then reviews it for consistency with the CAA.
42 U.S.C. § 7410(k)(2). EPA has 12 months to complete this review. *Id.*

EPA's consistency review is not an opportunity to second guess the state's
determination of appropriate pollution controls. *Nebraska*, 812 F.3d at 667. EPA
only determines whether the SIP meets the applicable requirements of the CAA.
42 U.S.C. § 7410(k)(3). If it does, EPA *must* approve it. *Id.* ("the Administrator
*shall* approve such submittal as a whole if it meets all of the applicable
requirements of this chapter") (emphasis added); *see also Alabama Envt'l Council*

4

*v. EPA*, 711 F.3d 1277, 1280 (11th Cir. 2013) ("If the SIP revision meets the requirements in the Clean Air Act, the EPA must approve it."); *Utah Physicians for a Healthy Env't v. Kennecott Utah Copper, LLC*, 191 F. Supp. 3d 1287, 1290 (D. Utah 2016) ("If a SIP satisfies the applicable requirements, EPA must approve it."). Only if the submission does not meet the requirements of the CAA can EPA disapprove the SIP. *See id.* And only then can EPA issue a FIP setting emission limits and other requirements for the state. 42 U.S.C. § 7410(c)(1).

## II.    EPA Informally Adopted a Framework for States to Use in Developing their Good Neighbor SIPs.

The CAA provides that SIPs are to contain "adequate provisions" so that the state will not "contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect" to the NAAQS. 42 U.S.C. § 7410(a)(2)(D). This is sometimes referred to as the "Good Neighbor" or "Interstate Transport" requirement.

EPA has promulgated no regulation states must follow to satisfy the Good Neighbor requirement. EPA informally developed a 4-step framework that it has used in past FIPs, however, and that it has suggested states use to develop their Good Neighbor SIPs.[3] These four steps are:

---

[3] *Air Plan Disapproval; Region 5 Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards*, 87 Fed. Reg. 9,838, 9,839 (February 22, 2022) ("Proposed SIP Disapproval").

5

(1) Identify monitoring sites that are projected to have problems attaining and/or maintaining the NAAQS (*i.e.,* nonattainment and/or maintenance receptors);

(2) identify states that impact those air quality problems in other (*i.e.,* downwind) states sufficiently such that the states are considered ''linked'' and therefore warrant further review and analysis;

(3) identify the emissions reductions necessary (if any), applying a multifactor analysis, to eliminate each linked upwind state's significant contribution to nonattainment or interference with maintenance of the NAAQS at the locations identified in Step 1; and

(4) adopt permanent and enforceable measures needed to achieve those emissions reductions.[4]

Notably, if a state is not "linked" to any downwind receptor at Step 2, no further analysis is needed. *See* SIP Disapproval at 9,342 (if a "state is not 'linked' to a downwind air quality problem" at Step 2, "the state does not contribute significantly to nonattainment or interfere with maintenance of the NAAQS in the downwind states").

## III. EPA Issued Data, Modeling, and Recommendations for States to Use in Developing Their SIPs.

EPA issued three memoranda to "assist states in evaluating their potential impact on potential downwind air quality problems" for the 2015 ozone NAAQS.[5] First, in March 2018, EPA issued a Modeling Memorandum that included EPA's four-step framework discussed above (which EPA acknowledged "states have

---

[4] *Id.*
[5] App'x 0001 ("Modeling Memorandum").

6

flexibility to follow" or not, "so long as their chosen approach has adequate technical justification and is consistent with the requirements of the CAA"). App'x 0003. The memorandum also provided EPA's most recent modeling and data for states' Step 1 and Step 2 analyses and identified a number of "flexibilities" states could consider in developing their SIPs. *Id*. at App'x 0003-0006 and App'x 0008-0010. Among these flexibilities was the option to consider different "thresholds" for determining whether the state's emissions were linked to any downwind state at Step 2. *Id.* at App'x 0009-0010.

On August 31, 2018, EPA issued a second memorandum providing additional guidance on selecting a threshold to apply at Step 2.[6] The Threshold Memorandum noted that EPA had used 1% of the NAAQS in previous rules, which would result in a threshold of 0.70 parts per billion ("ppb") for the 2015 ozone NAAQS of 70 ppb. *Id*. at App'x 0022-0023. EPA also stated, however, that a 1 ppb threshold "may be appropriate for states to use to develop SIP revisions addressing the good neighbor provision for the 2015 ozone NAAQS." *Id.* at App'x 0023.

In late October 2018, nearly a month after the SIP submission deadline, EPA issued a third memorandum, this time on flexibilities to identify maintenance-only

---

[6] App'x 0021 ("Threshold Memorandum").

Appellate Case: 23-1776     Page: 12     Date Filed: 05/31/2023 Entry ID: 5282381

receptors.[7] EPA stated that it had used a combination of monitoring data and maximum modeled design values to identify maintenance-only receptors in prior Good Neighbor rulemakings but suggested that states could use alternatives, particularly if they had established downward trends of in-state ozone-causing emissions. Maintenance Memorandum at 4.

## IV. Procedural History

### A. EPA Updated the Ozone NAAQS.

In 2015, EPA promulgated a revised ozone NAAQS that reduced the primary and secondary 8-hour ozone standards from 75 ppb to 70 ppb. *Final Rule; National Ambient Air Quality Standards for Ozone*, 80 Fed. Reg. 65,292 (Oct. 26, 2015). This revision triggered Minnesota's obligation to revise its SIP within three years.

### B. Minnesota Used EPA's Framework, Data, Modeling, and Recommendations to Develop Its SIP.

Minnesota timely submitted its revised SIP on October 1, 2018. App'x 0063. Minnesota applied EPA's 4-step framework. App'x 0070-0080. It used the best information available for its assessment. This included EPA's own modeling from the Modeling Memorandum and additional modeling developed by the Lake Michigan Air Directors Consortium ("LADCO"), which Minnesota used to

---

[7] App'x 0029 ("Maintenance Memorandum").

8

independently identify nonattainment and maintenance-only receptors. *Id.* Minnesota used a 1% threshold to identify "linkages" at Step 2, consistent with the Threshold Memorandum. App'x 0069. Further, while EPA's Maintenance Memorandum was not issued until weeks after the SIP submission was due, Minnesota used the same approach recommended in that memorandum to identify linkages. App'x 0071-0072 and 0084.

The results of Minnesota's evaluation were conclusive. Both EPA's and LADCO's modeling showed that Minnesota contributes less than 1% (0.70 ppb) of the NAAQS to all downwind receptors, with a maximum contribution from either model of 0.45 ppb. App'x 0073. Thus, following EPA's 4-step framework, and using EPA's own data, modeling and recommendations, Minnesota demonstrated that it was not "linked" to any downwind receptor, and therefore was not contributing significantly to, or interfering with maintenance of, the 2015 ozone NAAQS.

While this concluded its SIP obligation, Minnesota went further and also evaluated emission trends. App'x 0075-0078. This analysis showed that Minnesota had achieved significant reductions in ozone-causing pollutants already, and that these emissions were expected to continue trending downward to such a degree that, even if Minnesota were linked to any downwind receptor, its contributions could not be considered significant at Step 3. *Id.* As such, no additional emission

9

reductions would be justified to eliminate Minnesota's significant contributions even if EPA disagreed with Minnesota's analysis at Steps 1 and 2. App'x 0079.

**C.  EPA Found No Error or Omission in Minnesota's SIP, Yet Still Disapproved It.**

Minnesota's SIP was deemed complete in April 2019, requiring EPA to approve or disapprove it by April 2020. EPA did not meet its obligation. Instead, approximately three years after the statutory deadline, EPA proposed to *disapprove* Minnesota's SIP, along with 18 other states' SIPs. Proposed SIP Disapproval at 9,868.

EPA recognized that Minnesota had used "the most recently available EPA modeling at the time the state submitted" its SIP. *Id.* at 9,867. EPA also acknowledged that Minnesota had adhered to EPA's nonbinding 4-step framework. *Id.* at 9,848. EPA nonetheless proposed to disapprove Minnesota's SIP based on new modeling, which used different data, and which EPA had just published. *Id.* at 9,867-89. In other words, years after Minnesota's SIP submission was due, and without citation to any statutory authority, EPA moved the goalposts on Minnesota, rejected its own prior data and modeling, and proposed to disapprove Minnesota's SIP based on its preference for modeling that was not available when Minnesota developed its SIP.

This new modeling, which EPA called its "2016v2" platform, still showed no significant impact on downwind attainment of the NAAQS. *Id.* at 9,868. It

10

modeled impacts at two maintenance-only receptors, however, with a maximum contribution above 1% (or 0.70 ppb) of the NAAQS. *Id.* at 9,868 (identifying maximum impacts of 0.97 ppb for one receptor and 0.79 ppb for the other). These impacts were still below the 1 ppb threshold provided in the Threshold Memorandum, but EPA decided not to use this option, and to find that these results "linked" Minnesota to interference with maintenance of the NAAQS at Step 2. *Id.*

Minnesota and others commented on, and objected to, EPA's Proposed SIP Disapproval,[8] but in its final rule, EPA not only denied anything was wrong with its approach, it moved the goalposts yet again—relying not on the 2018 data, or even the 2022 "2016v2" modeling platform, but instead on even newer data and modeling EPA called the "2016v3" modeling platform and which EPA released only with the final rule. SIP Disapproval at 9,339. This new data and modeling now showed Minnesota "linked" to only a single maintenance-only receptor at a maximum contribution of 0.85 ppb for 2023 (1.2% of the NAAQS). SIP Disapproval at 9,354, Table III.C-1.

There was no opportunity for public comment on the 2016v3 platform. Yet based on its results, EPA changed course again, concluding that it would partially approve Minnesota's SIP, as to the "nonattainment" portion of the Good Neighbor requirements, but, based on the thinnest thread linking Minnesota to interference

---

[8] App'x 0171; App'x 0174.

Appellate Case: 23-1776     Page: 16     Date Filed: 05/31/2023 Entry ID: 5282381

with maintenance—a modeled impact of 0.15 ppb above EPA's (nonbinding) threshold at a single maintenance-only receptor—EPA disapproved the rest of Minnesota's Good Neighbor SIP. SIP Disapproval at 9,357.

### D. EPA Simultaneously Issued a FIP that Will Impose Irrecoverable Costs on Petitioners.

EPA has two years after a SIP disapproval to promulgate a FIP, during which time states can correct and resubmit their SIPs. 42 U.S.C. § 7410(c). Rather than give Minnesota this opportunity, EPA proposed a FIP for Minnesota and 25 other states in April 2022, only two months after it *proposed* disapproval of Minnesota's SIP.[9] Then, on March 15, 2023, roughly one month after the SIP Disapproval, the Administrator of EPA signed the final FIP, imposing emission controls on Petitioners, among many others.[10] The FIP is only awaiting publication in the Federal Register and is set to become effective 60 days after publication. App'x 0179.

Electric utilities in the State of Minnesota are fully committed to continuing to execute the clean energy transition in a planned and thoughtful way that preserves reliability and affordability for customers. As discussed in the attached declarations, however, the FIP subjects Petitioners' Minnesota power plants to an

---

[9] Federal Implementation Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard, 87 Fed. Reg. 20,036 (April 6, 2022).
[10] App'x 0178.

unnecessary and burdensome emissions trading program. App'x 1152-1155 at ¶¶12-15; App'x 1160 at ¶¶7-8; App'x 1170-1171 at ¶¶14-15. This program does not allocate them sufficient credits to operate, forcing them to choose between curtailing operation, at the potential risk of grid stability, or purchasing emission credits at a potentially expensive and highly variable cost. App'x 1152-1156 at ¶¶12-17; App'x 1161-1164 at ¶¶9-17; App'x 1170-1171 at ¶¶14-16.

## STAY STANDARD

Courts consider four factors in determining whether to grant a stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) the prospect of irreparable injury; (3) the possibility of harm to other parties; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 423 (8th Cir. 1996). These "four considerations are factors to be balanced and not prerequisites to be met." *State of Ohio ex rel. Celebrezze v. Nuclear Regul. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). As explained below, each factor favors a stay here.

## ARGUMENT

### I. Petitioners Are Likely To Succeed On The Merits.

Both the CAA and APA provide that agency action must be held unlawful and set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 7607(d)(9); 5 U.S.C. § 706(2)(A). This

13

requires the agency's "action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project,* 141 S. Ct. 1150, 1158 (2021). A court must set aside any action premised on reasoning that fails to account for "relevant factors" or evinces "a clear error of judgment." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quotations omitted).

EPA's SIP Disapproval is unlawful because: (1) EPA impermissibly relied on new data to disapprove of Minnesota's SIP without providing adequate notice and an opportunity for public comment; and (2) the SIP Disapproval subverts the well-established and vital cooperative federalism underlying the entire CAA and in particular, the NAAQS.

## A. EPA Cannot Base its SIP Disapproval on Information That Was Not Subject to Notice and Public Comment.

Both the CAA and APA require that EPA's rulemaking process include adequate public notice and an opportunity to comment. *Small Ref. Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 547 (D.C. Cir. 1983). This includes providing the public with the evidence on which EPA intends to rely. *Id.* at 540. Adding evidence on which EPA relies after the close of the comment period is "highly improper." *Id.* at 540; *see also Sierra Club v. Costle,* 657 F.2d 298, 398 (D.C. Cir. 1981) ("If … documents of central importance upon which EPA intended to rely had been entered on the docket too late for any meaningful public

Appellate Case: 23-1776    Page: 19    Date Filed: 05/31/2023 Entry ID: 5282381

comment prior to promulgation, then both the structure and spirit of [CAA] section 307 would have been violated.").

EPA's SIP Disapproval was based on new "2016v3" emissions data and modeling. SIP Disapproval at 9,344. The results of this modeling were first described to the public in the SIP Disapproval and associated documents made available the same day, and the actual data and modeling files were not made electronically available even then. *See* SIP Disapproval at 9,336. They needed to be requested by the public, a process that takes several additional weeks.

The 2016v3 platform was not just an inconsequential update to prior information in the docket. EPA "made a number of updates to [its] inventories and model design to construct a 2016v3 emissions platform which was used to update [EPA's] air quality modeling." SIP Disapproval at 9,339. The SIP Disapproval used "this updated modeling to inform [EPA's] final action on [state] SIP submissions," including Minnesota's. *Id.* The results were significant. Minnesota's "linkage" (what Minnesota would need to address in a SIP) went from two maintenance-only receptors with a maximum impact of 0.97 ppb to a single maintenance-only receptor with a maximum impact of 0.85 ppb. *Id.* at 9,354, Table III.C-1.

The new modeling platform was also of central importance to EPA's disapproval of Minnesota's SIP. In fact, it was the sole basis for EPA's

15

disapproval. *Id.* at 9,357 (finding Minnesota's analysis "ultimately inadequate" in light of EPA's "more recent air quality analysis" and disapproving step 2 of Minnesota's SIP because "[i]n the 2016v3 modeling, Minnesota is projected to be linked above 1 percent of the NAAQS to one maintenance-only receptor"). As a result, EPA was required to provide the public notice of its new data and an opportunity for meaningful public comment.

EPA's publication of its revised emissions inventory and modeling the day of the SIP Disapproval did not satisfy this requirement. In *Kennecott Corp. v. EPA,* 684 F.2d 1007, 1019 (D.C. Cir. 1982), the D.C. Circuit found EPA had not provided adequate opportunity for public comment on economic modeling placed in the docket only one week before promulgation of its final regulations. Here, EPA did not make its new emissions data and modeling publicly available until the *day* it published its final SIP Disapproval.

It is also not enough to say that Petitioners had the opportunity to comment on EPA's previous version of the emissions data and modeling, or that EPA's latest data simply "incorporates comments generated during the public comment period." SIP Disapproval at 9,366. As the D.C. Circuit stated in *Chesapeake Climate Action Network v. EPA*, it would be an "unreasonable burden on commenters not only to identify errors in a proposed rule but also to contemplate why every theoretical course of correction the agency might pursue would be

16

inappropriate or incorrect." 952 F.3d 310, 320 (D.C. Cir. 2020); *see also Small Ref.*, 705 F.2d at 549 (EPA "cannot bootstrap notice from a comment"). As the Fifth Circuit recently found in addressing a SIP disapproval for Texas that relied on the same 2016v3 modeling platform:

> The EPA … acted arbitrarily and capriciously by grounding its Final SIP Denial in modeling data that wasn't available when Louisiana and Texas submitted their SIPs…. At best, these choices evince a "clear error of judgment" on the EPA's part. *Anderson Cancer Ctr.*, 985 F.3d at 475 (quotation omitted). And at worst they perpetuate a "surprise switcheroo" on both Texas and Louisiana. *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005) (Sentelle, J.); *accord Azar v. Allina Health Sem.*, 139 S. Ct. 1804, 1810 (2019) ("surprise switcheroo"). Agencies have wide discretion to deploy their expertise, but they cannot move the administrative goalpost in so doing. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) ("[A]gencies should provide regulated parties fair warning of the conduct a regulation prohibits or requires.").

Unpublished Order, *Texas, et al. v.* EPA, Case No, 23-60069 (5th Cir. May 1, 2023) (App'x 1131-1132) (quotation and alteration omitted).

The new data and modeling on which EPA relies for the SIP Disapproval differs significantly from that which was in the public record. EPA's failure to provide opportunity for notice and comment on the data underlying its decision on Minnesota's SIP renders its SIP Disapproval arbitrary and capricious.

## B. The SIP Disapproval is Contrary to the CAA and Undermines Cooperative Federalism.

As EPA has acknowledged, under the framework of cooperative federalism on which the CAA is based, EPA "establishes broad standards or goals" but "states

17

are given the opportunity to determine how they wish to achieve those goals." SIP Disapproval at 9,367. Only "if states choose not to or fail to adequately implement programs to achieve those goals," is EPA "empowered to directly regulate to achieve the necessary ends." *Id.* Thus, "states have the obligation and opportunity in the first instance to develop an implementation plan to achieve the NAAQS under CAA section 110" and "EPA will approve SIP submissions under CAA section 110 that fully satisfy the requirements of the CAA." *Id.* In fact, EPA has no discretion; it must approve a SIP that complies with the statutory requirements of the CAA. 42 U.S.C. § 7410(k)(3).

EPA departed from this framework and violated the CAA when it disapproved Minnesota's SIP, not because of any error, or omission of a statutory requirement, but because EPA preferred a different model to that used by Minnesota. Use of the 2016v3 modeling platform is not required by the CAA and EPA did not have the authority to condition approval on its use. 42 U.S.C. § 7410(k)(3); *see also Sierra Club v. EPA*, 939 F.3d 649, 673, n.106 (5th Cir. 2019) ("we are aware of no authority[] demanding that Louisiana prefer the EPA's analyses to those provided by industry"); *Sierra Club v. EPA*, 356 F.3d 296, 308 (D.C. Cir. 2004) (agreeing with EPA that states did not need to address a modeling platform released "just one month before the States submitted their SIPs"); Cf. *Union Elec. Co. v. EPA*, 427 U.S. 246, 257 (1976) ("The mandatory

18

'shall' makes it quite clear that the Administrator is not to be concerned with factors other than those specified.") (quoting § 110(a)(2) of the 1970 Amendments to the Clean Air Act). As long as Minnesota's SIP complied with the requirements of the CAA, which it did, EPA had a nondiscretionary duty to approve it. EPA's disapproval of Minnesota's SIP was contrary to its statutory mandate and arbitrary and capricious.

As discussed recently by the Fifth Circuit in its analysis of EPA's disapproval of Texas' SIP:

> EPA's decision to consider after-the-statutory-deadline information also 'fail[ed] to account for `relevant factors'—namely, the CAA's system of cooperative federalism. *Anderson Cancer Ctr.*, 985 F.3d at 475 (quoting *Marsh*, 490 U.S. 360 at 378). Congress decided that the States should "drive the regulatory process." *Texas* 2016, 829 F.3d at 411. This choice is clearly reflected throughout the CAA, such as the provisions cabining the Agency's decisional timeframe, 42 U.S.C. § 7410(k)(1)-(2), and the sections "confin[ing] the EPA to the ministerial function of reviewing SIPs for consistency with the Act's requirements," *Luminant* 2012, 675 F.3d at 921; e.g., 42 U.S.C. § 7410(k)(3) ("shall approve"). Here, however, the EPA ignored its statutory deadline by a measure of years; used that extra time to collect more data, issue novel guidance, and develop new modeling; denied Stay Petitioners' SIPs in part based on that new information; then created FIPs imposing the EPA's policy preferences on the States.

App'x 1133.

While the *Texas* case involves a different SIP, EPA committed the exact same legal errors here. Minnesota's SIP was timely submitted and complied with all of the requirements of the CAA, both at the time it was submitted and by EPA's

19

statutory deadline to approve Minnesota's SIP. Having no basis to disapprove Minnesota's SIP, EPA was obligated to approve it. By waiting three more years, and then using different data to do new modeling, and then to disapprove Minnesota's SIP entirely on that new information, EPA violated both the language and spirit of the CAA.

## II. Petitioners are Already Suffering Irreparable Harm.

"In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils.*, 109 F.3d at 425.

EPA's SIP Disapproval is predicated on an incorrect conclusion that Minnesota is interfering with maintenance of the 2015 ozone NAAQS at one downwind site, placing Minnesota in an erroneous state of non-compliance with the Good Neighbor requirement of the CAA. The disruption of the system of cooperative federalism upsets Petitioners' settled expectations and alone is an irreparable harm supporting a stay. *See* App'x 1151-1152 at ¶¶9-11; App'x 1160-1162 at ¶¶8-12; *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) ("complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs.") (Scalia, J., concurring in part and in the judgment); *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2018).

20

The SIP Disapproval also permits EPA to promulgate the FIP that has been its clear motivation since it first proposed disapproval of Minnesota's SIP. 42 U.S.C. § 7410(c). Harms from the FIP are appropriately considered in deciding whether to stay the SIP disapproval. *See EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 44 n.6 (D.C. Cir. 2012) (Rogers, J., dissenting), *rev'd on other grounds*, 572 U.S. 489 (2014) ("If [states] wish to avoid enforcement of the Transport Rule FIPs because they contend EPA's SIP disapprovals were in error, the proper course is to seek a stay of EPA's disapprovals in their pending cases; if granted, a stay would eliminate the basis upon which EPA may impose FIPs on those States.").

The FIP will impose certain and imminent harms on Petitioners that are both great and irreparable. EPA has already finalized the FIP. It is only awaiting publication. This leaves no time for reconsideration or judicial review to run its course before Petitioners are injured by the FIP, let alone time for Minnesota to address EPA's issues with the submitted SIP. The FIP includes significant obligations for Petitioners, starting in the current 2023 ozone trading season (assuming publication in the Federal Register occurs before August 1). App'x 1152-1156 at ¶¶12-17; App'x 1160-1164 at ¶¶7-17; App'x 1170-1171 at ¶¶13-17. These obligations require Petitioners to prepare to participate in a trading program in the middle of the ozone season, creating a "moving target" for compliance.

21

App'x 1152-1155 at ¶¶13-15; *see also* App'x 1162-1163 at ¶¶15-16; App'x 1171 at ¶16. The trading program allocates insufficient credits to Petitioners for their operations, which will require them to curtail operation or buy credits on the open market; either way this inflicts additional costs on Petitioners and, if it results in curtailment of operations, may threaten the stability of Minnesota's power grid. App'x 1152-1156 at ¶¶13-17; App'x 1161-1164 at ¶¶9-17; App'x 1171-1172 at ¶¶17-18. These burdens are irreparable. *Iowa Utils. Bd.*, 109 F.3d at 426; *Texas*, 829 F.3d at 433 ("[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs.") (citation omitted); *see also* App'x 1155-1155 at ¶15; App'x 1163 at ¶16.

## III. Staying the SIP Disapproval Will Not Significantly Injure Other Parties.

EPA has itself delayed ruling on two state SIPs, tacitly acknowledging the lack of a significant harm in doing so. SIP Disapproval at 9,336 (deferring decision on Tennessee's and Wyoming's SIPs). It has also extended a judicially enforceable deadline to review Good Neighbor SIPs for three other states until December 15, 2023 without any mention of public harm from the delay. *See* App'x 1143-1146. SIPs for Texas and Louisiana have already been stayed by the Fifth Circuit, which found "EPA will suffer no harm if the SIP is stayed pending review. Indeed, if time really were of the essence, EPA would not have taken almost five years to disapprove Texas's SIP and impose a FIP." App'x 1131.

22

## IV. The Public Interest Lies in Granting a Stay.

Here, the public interest supports a stay. It is in the public interest to protect the CAA's cooperative federalism structure. And it is undoubtedly in the public interest to maintain a reliable power grid. A stay will also minimize costs to the public by staying the SIP Disapproval until the merits of the issues described above can be fully evaluated and addressed.

## CONCLUSION

For these reasons, Petitioners respectfully request that this Court stay EPA's SIP Disapproval.

Dated: May 31, 2023

Respectfully Submitted,

*/s/Douglas A. McWilliams*
Douglas A. McWilliams
John Lazzaretti
Jon Bloomberg
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower
127 Public Square
Cleveland, OH 44114
216.479.8500
douglas.mcwilliams@squirepb.com

*Counsel for Petitioners*

23

**Certificate of Compliance**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 5,197 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman font, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

*/s/Douglas A. McWilliams*
Douglas A. McWilliams

Appellate Case: 23-1776    Page: 29    Date Filed: 05/31/2023 Entry ID: 5282381

## Certificate of Service

I certify that on May 31, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to any CM/ECF participants.

*/s/Douglas A. McWilliams*
Douglas A. McWilliams

Appellate Case: 23-1776    Page: 30    Date Filed: 05/31/2023 Entry ID: 5282381